IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARGARET WISINSKI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | **Civil No. 07-346 Erie** |
| | ) | |
| AMERICAN COMMERCE | ) | |
| GROUP, INC. and AMERICAN | ) | |
| COMMERCE INSURANCE | ) | |
| COMPANY, | ) | |
| Defendant. | ) | |

## OPINION

This is an insurance coverage case brought by Margaret Wisinski against her insurer,

American Commerce Group, Inc. ("ACIC") (also identified in the Complaint as American

Commerce Insurance Company). Ms. Wisinski initially filed a Complaint in the Court of

Common Pleas of Erie County Pennsylvania on November 20, 2007 alleging bad faith in

violation of the Pennsylvania Bad Faith statute, 42 Pa.C.S.A. §8371, breach of contract and

unfair trade practices in violation of the Motor Vehicle Financial Responsibility Law, 75 Pa

C.S.A. §1701, *et.seq.* ACIC timely removed the case to this Court on December 11, 2007, based

on diversity of the parties. (Doc. Nos 1 and 15). The parties have filed cross-motions for

summary judgment. As explained below, we will grant in part, and deny in part, both parties'

motions.

## I. Factual Background

Ms. Wisinski was involved in a motor vehicle accident in Fairview, Erie County, Pennsylvania on December 20, 2001. (Def.'s Statement of Facts at 1; Pl.'s Resp. to Def.'s Statement of Facts at 1). The accident also involved another vehicle driven by Jeffrey Kowalski, who was uninsured at the time because his policy with State Farm had expired or been cancelled on September 1, 2001. Id. As a result of the accident, Ms. Wisinski suffered trauma to both of her knees. (Pl.'s Statement of Facts at 4; Def.'s Resp. to Pl.'s Statement of Facts at 4). The injury required injections for pain in both knees, arthroscopic repair and bilateral total knee replacements. Id. In total, Ms. Wisinski incurred medical costs of $41,269. Id.

Ms. Wisinski reported the accident to ACIC on December 21, 2001. (Pl.'s Statement of Facts at 3; Def.'s Resp. to Pl.'s Statement of Facts at 3). That same day, ACIC opened a claim file and reviewed Ms. Wisinski's coverage. Id. The claim was assigned to Terri West. (Def.'s Statement of Facts at 8; Pl.'s Statement of Facts at 8). The claim file log indicates that Terri West documented the claim to be under Ms. Wisinski's personal auto policy with $5,000 in First Party Medical Benefits, Additional First-Party Benefits and Collision, with a $200 Collision deductible and also documented that a message was left for Ms. Wisinski on her answering machine. Id.

The claim file log also indicates that Ms. West documented a conversation with Ms. Wisinski, informing her that she would mail a Pennsylvania Personal Injury Protection, or PIP, application ("Application for Benefits") to her. (Def.'s Statement of Facts at 9; Pl.'s Statement of Facts at 9). Ms. Wisinski completed and signed the application, which was received by ACIC on January 4, 2002. (Def.'s Statement of Facts at 10; Pl.'s Statement of Facts at 10). Ms. Wisinski's

initial Application for Benefits indicated that she did not have lost wages as a result of the injury. (Def.'s Statement of Facts at 11; Pl.'s Resp. to Def.'s Statement of Facts at 11).

In January 2002, Ms. Wisinski retained an attorney from the law firm of Dallas W. Hartman, P.C. to represent her in regard to the accident. (Def.'s Statement of Facts at 12; PL.'s Resp. to Def.'s Statement of Facts at 12). On January 17, 2002, Ms. Wisinski's counsel wrote to ACIC, advising of his representation of Ms. Wisinski and requesting a declarations page and specimen policy. (Def.'s Statement of Facts at 12; Pl.'s Statement of Facts at 5). The letter also included an authorization for release of medical records, which revoked all prior authorizations. (Def.'s Statement of Facts at 13; Pl.'s Resp. to Def.'s Statement of Facts at 13). It also directed all future correspondence by ACIC to Ms. Wisinski to be made through her counsel's office. Id.

Terri West acknowledged Ms. Wisinski's counsel's letter by letter dated February 7, 2002. Her correspondence indicated that she had ordered a copy of the declarations page and included the original Application for Benefits form completed by Ms. Wisinski, with an additional copy for any necessary changes. (Def.'s Statement of Facts at 14; Pl.'s Resp. to Def.'s Statement of Facts at 14). The claim file log indicates that Ms. West requested a full certified policy, including applicable declarations page and policy forms on February 7, 2002. (Def.'s Statement of Facts at 15; Pl.'s Resp. to Def.'s Statement of Facts at 15). On February 25, 2002, Ms. West sent a letter to Ms. Wisinski's counsel indicating that she had sent a certified copy of the declaration of limits to Ms. Wisinski's counsel. (Def.'s Statement of Facts at 16; Pl.'s Resp. to Def.'s Statement of Facts at 16). According to the parties, it is unclear whether a certified copy of Ms. Wisinski's policy was also sent to her counsel and whether an entire declarations page, including pages for both vehicles, was sent with this correspondence. (Id.; Pl.'s Statement of Facts at 5; Def.'s Resp. to Pl.'s Statement of Facts at 5). No further requests were made by Ms.

Wisinski's counsel following West's February 25, 2002 correspondence. (Def.'s Statement of Facts at 17; Pl.'s Resp. to Def.'s Statement of Facts at 17).

Between January 2002 and August 2002, the claim file log indicates the receipt of and payment for Ms. Wisinski's medical bills. (Def.'s Statement of Facts at 18; Pl.'s Resp. to Def.'s to Plaintiff's Statement of Facts at 18). A June 11, 2003, entry in the claim file indicates that Ms. Wisinski's first party medical benefits in the amount of $5,000 had been exhausted. (Pl.'s Statement of Facts at 6; Def.'s Resp. to Pl.'s Resp. to Def.'s Statement of Facts at 6).

On August 30, 2002, Ms. Wisinski's counsel indicated that he would provide a narrative report from Ms. Wisinski's physician regarding her right knee and a signed wage verification form in order to proceed with an income loss benefits claim. (Def.'s Statement of Facts at 19; Pl.'s Resp. to Def.'s Statement of Facts at 19). In response, ACIC provided Ms. Wisinski with a second Application for Benefits form. (Def.'s Statement of Facts at 20; Pl.'s Resp. to Def.'s Statement of Facts at 20).

Ms. Wisinski completed a second Application for Benefits dated September 20, 2002, which included her income loss claim. Id. The application indicated that Ms. Wisinski was employed by the United States Postal Service at the time of the accident, earning $776 weekly. Id. It also indicated that Ms. Wisinski incurred lost wages as a result of the December 20, 2001 accident. Id. Ms. Wisinski's counsel made a demand for payment of wage benefits in a settlement demand letter dated September 23, 2003. (Pl.'s Statement of Facts at 7; Def.'s Resp. to Pl.'s Statement of Facts at 7). The letter also indicates that Ms. Wisinski's counsel was unable to find insurance coverage for the tortfeasor, Mr. Kowalski. Id. Ms. Wisinski's counsel made a demand to settle Ms. Wisinski's uninsured motors coverage for the limits. Id.

In November 2002, ACIC documented a conversation with Ms. Wisinski indicating that ACIC's claim representative, Nelson Brothers, spoke directly to Ms. Wisinski advising her to fax a request to her physician to verify disability as a result of the accident. (Def.'s Statement of Facts at 21; Pl.'s Resp. to Def.'s Statement of Facts at 21).

On March 20, 2003, Barbara Welton, representing Ms. Wisinski, wrote to Mr. Brothers indicating that she would be handling all future correspondence regarding Ms. Wisinski's claim. (Def.'s Statement of Facts at 23; Pl.'s Resp. to Def.'s Statement of Facts at 23). Thereafter, on May 18, 2003, another attorney representing Ms. Wisinski, Larry Keith, contacted ACIC requesting that he be contacted regarding the income loss payment issue. (Def.'s Statement of Facts at 24; Pl.'s Resp. to Def.'s Statement of Facts at 24). The claim file log indicates that as of May 2003 ACIC was waiting for documentation to support the wage loss claim. (Def.'s Statement of Facts at 25; Pl.'s Resp. to Def.'s Statement of Facts at 25). The log also indicates that Susan Ridgeway was handling Ms. Wisinski's First Party Benefit file and on May 21, 2003 she contacted Mr. Keith to advise him that she was awaiting documentation from Ms. Wisinski's employer and physician regarding the income loss claim. (Def.'s Statement of Facts at 26; Pl.'s Resp. to Def.'s Statement of Facts at 26). The log indicates that Mr. Keith noted he was not the primary attorney on the claim, but their office would provide the requested documentation. Id.

Also in May 2003, ACIC reassigned Ms. Wisinski's First Party Benefits claims, including her income loss claim, to claims manager Kelly Bihn. (Def.'s Statement of Facts at 27; Pl.'s Resp. to Def.'s Statement of Facts at 27). Ms. Binh's May 15, 2003 log notes indicate that Ms. Wisinski's file was open for first party benefits including medical coverage in the amount of $5,000 and income loss coverage with a limit of $1,500 a month and an aggregate limit of $25,000. (Def.'s Statement of Facts at 27; Pl.'s Resp. to Def.'s Statement of Facts at 27). She

indicated that on May 15, 2003 she told Ms. Wisinski's counsel that ACIC still needed income loss information from Ms. Wisinski's employer and physician. (Def.'s Statement of Facts at 28; Pl.'s Resp. to Def.'s Statement of Facts at 28). On June 5, 2003, Ms. Wisinski's counsel provided, to ACIC, a form entitled "Wage and Salary Verification" from the United States Postal Service, as well as the police report from the accident. (Def.'s Statement of Facts at 31; Pl.'s Resp. to Def.'s Statement of Facts at 31).

Ms. Bihn's log notes indicate that between May and July 2003, she noted that medical records provided from Ms. Wisinski indicated that she had been granted Social Security Disability Benefits as of July 2001. (Def.'s Statement of Facts at 32; Pl.'s Resp. to Def.'s Statement of Facts at 32). The log also indicates that despite the medical records indication that Ms. Wisinski had been granted disability benefits, her counsel assured Ms. Bihn that Ms. Wisinski was not on disability. Id. Ms. Wisinski's counsel indicated that she would submit a signed affidavit from Ms. Wisinski indicating as such. Id. Ms. Wisinski's counsel then provided a wage and salary verification from the United States Postal Service, which indicated that Ms. Wisinski had not been in a "pay status", that is, had not been actively working for the Postal Service since January 3, 2001. (Def.'s Statement of Facts at 33; Pl.'s Resp. to Def.'s Statement of Facts at 33). On July 2, 2001, the Postal Service issued a "letter of removal" terminating Ms. Wisinski's employment with the Service six months prior to the December 20, 2001 accident. (Id.)

Ms. Bihn wrote to Ms. Wisinski's counsel on July 31, 2003 advising that she needed further explanation regarding the wage loss information provided by the Postal Service, specifically, why Ms. Wisinski was no longer on pay status as of January 3, 2001. (Def.'s Statement of Facts at 34; Pl.'s Resp. to Def.'s Statement of Facts at 34). She likewise indicated

that she needed an affidavit from Ms. Wisinski indicating that she was not on Social Security Disability. Id.

On September 10, 2003, Ms. Bihn indicated that Ms. Wisinski's counsel provided a physician's report from Dr. German indicating that Ms. Wisinski had an injury to her right knee prior to the December 20, 2001 accident and a diagnosis post-accident of "exacerbation of underlying arthritis" as a result of the accident. (Def.'s Statement of Facts at 35; Pl.'s Resp. to Def.'s Statement of Facts at 35). In regard to income loss, Dr. German indicated that he believed that Ms. Wisinski was unable to work. Id. Ms. Bihn's log notes indicate that she questioned whether or not the income loss claim was related to Ms. Wisinski's injuries. Id.

On September 18, 2003, Ms. Wisinski's counsel advised ACIC that because Mr. Kowalski was uninsured at the time of the accident, Ms. Wisinski would be pursuing an uninsured motorist claim against ACIC. (Def.'s Statement of Facts at 37; Pl.'s Resp. to Def.'s Statement of Facts at 37). On October 15, 2003, ACIC was advised that Mr. Kowalski was deceased. (Pl.'s Resp. to Def.'s Statement of Facts at 38). Ms. Wisinski's counsel also requested that ACIC waive subrogation at this time. Id. On February 2, 2004 ACIC waived subrogation. (Def.'s Statement of Facts at 38; Pl.'s Resp. to Def.'s Statement of Facts at 38).

On January 30, 2004, Ms. Bihn offered to settle Ms. Wisinski's uninsured motorist claim for $7,798. (Pl.'s Statement of Facts at 8; Def.'s Resp. to Pl.'s Statement of Facts at 8). At the same time, Ms. Bihn denied Ms. Wisinski's income loss claim. Id. The claim file log indicates that ACIC had a reserve of $12,000 and had considered the case an "aggravation only" case. Id. A February 2, 2004 log note indicates that Ms. Bihn evaluated Ms. Wisinski's claim as an "aggravation only" claim, and with a settlement range between $7,798 and $14,943. (Def.'s Statement of Facts at 39; Pl.'s Resp. to Def.'s Statement of Facts at 39). Ms. Bihn noted a

settlement goal of $12,000. Id. According to Ms. Wisinski, the log notes from February 2, 2004 do not indicate that ACIC had been provided with information that Ms. Wisinski had arthroscopy on both knees subsequent to the December 20, 2001 accident. Id.

In February 2004, ACIC reassigned the claim file to a more experienced adjuster, Diane Hericks. (Def.'s Statement of Facts at 40; Pl.'s Resp. to Def.'s Statement of Facts at 40). Ms. Hericks reviewed the file on March 29, 2004, identified the policy limits to be $50,000, and on March 30, 2004, set the reserve at $50,000. (Pl.'s Statement of Facts at 9; Def.'s Resp. to Pl.'s Statement of Facts at 9).

Ms. Hericks' log entry dated March 30, 2004 states:

> [Claimant's] medical records indicate that she may have had a
> history of right knee problems prior to this accident but her doctors
> are reporting her condition was aggravated. It appears that her left
> knee complaints first started after our loss. Her MRI showed
> arthritic changes but they are arguing the accident caused the tear.
> Meds running over $14,000 claiming she has been unable to work
> (was earning $40,000 a year?) Wage records need to be checked
> out more closely/questionable if she was already on disability.
> But, considering worst case scenario I recommend we increase the
> reserve to the full $50,000 UM limit.

(Def.'s Exh. 6 at 1664).

A letter to Ms. Wisinski's counsel dated March 27, 2004 from Ms. Hericks requested a new signed authorization to release medical information and a list of past and present treating physicians. (Def.'s Statement of Facts at 42; Pl.'s Resp. to Def.'s Statement of Facts at 42). According to Ms. Wisinski, her counsel had already provided extensive medical records in September 2002, prior to this request. (Pl.'s Response to Def.'s Statement of Facts at 42). Counsel for Ms. Wisinski responded by letter dated May 10, 2004 indicating that he was in the process of obtaining updated medical and treatment records and bills. (Def.'s Statement of Facts at 45; Pl.'s Resp. to Def.'s Statement of Facts at 45).

Ms. Hericks followed up on November 9, 2004 with a letter to Ms. Wisinski's counsel, indicating that ACIC had waived subrogation rights and confirmed that Ms. Wisinski's counsel was in the process of gathering additional medical and wage documentation, including her medical history. (Def.'s Statement of Facts at 48; Pl.'s Resp. to Def.'s Statement of Facts at 48). Documentation in the log notes from May 26, 2005 indicates that, on that date, ACIC received a lien notice for Medicare benefits. (Def.'s Statement of Facts at 51; Pl.'s Resp. to Def.'s Statement of Facts at 51).

On August 11, 2005, Mr. Keith advised Ms. Hericks that the law firm of Dallas Hartman was no longer representing Ms. Wisinski. (Def.'s Statement of Facts at 52; Pl.'s Resp. to Def.'s Statement of Facts at 52). Ms. Hericks sent a letter to Ms. Wisinski, dated August 25, 2005, requesting that Ms. Wisinski contact her if she wished to pursue her claim further. (Def.'s Statement of Facts at 54; Pl.'s Resp. to Def.'s Statement of Facts at 54). Ms. Wisinski faxed a letter to ACIC dated November 22, 2005, indicating that she received Ms. Hericks August 25, 2005 letter and that she was interested in pursuing both an uninsured motorist and income loss claim. Id. Ms. Wisinski attached a report from her physician, Dr. Steele, and demanded $50,000, which was what she still believed the policy limits to be, as well as the aggregate of her first party income limit of $25,000. Id. The letter also indicated that if she did not hear from ACIC within ten days, she would file suit. Id.

On December 9, 2005, Ms. Hericks responded to Ms. Wisinski's correspondence by sending out new authorizations and again requesting a medical history so that ACIC could consider the demand. (Def.'s Statement of Facts at 57; Pl.'s Resp. to Def.'s Statement of Facts at 57). Ms. Hericks also increased her settlement offer to $9,000, while also indicating that Ms. Wisinski still had not provided additional income loss information. (Def.'s Statement of Facts at

58; Pl.'s Resp. to Def.'s Statement of Facts at 58). On December 9, 2005, Ms. Wisinski's new counsel, Timothy George, wrote to ACIC, requesting that the parties proceed to arbitration on Ms. Wisinski's uninsured motorist claim. (Pl.'s Statement of Facts at 11; Def.'s Resp. to Pl.'s Statement of Facts at 11).

On December 12, 2005, Ms. Wisinski filed suit against ACIC by filing a Writ of Summons in the Court of Common Pleas of Erie County, Pennsylvania. (Def.'s Statement of Facts at 60; Pl.'s Resp. to Def.'s Statement of Facts at 60). On December 28, 2005, Ms. Hericks contacted attorney Douglas Godshall and retained him to represent ACIC in regard to Ms. Wisinski's claims. (Pl.'s Statement of Facts at 12; Def.'s Resp. to Pl.'s Statement of Facts at 12). Ms. Hericks sent a fax to Mr. Godshall on December 28, 2008 asking whether arbitration would be required and stating her opinion that it "[a]ppeared according to our policy wording we have the option." (Pl.'s Statement of Facts at 8, Exh. H). However, ACIC had provided Mr. Godshall with an outdated policy that did not include Ms. Wisinski's new Pennsylvania Uninsured Motorists Endorsement that allowed arbitration upon the request of either party. The original relevant arbitration language provided that "[b]oth parties must agree to arbitration." (Pl.'s Exh. H at 0131.) The Pennsylvania Uninsured Motorist Endorsement to the policy changed the applicable relevant arbitration language to provide that "[e]ither party may make a written demand for arbitration." (Pl.'s Exh. A, Bates No. 45.)

On December 28, 2005, Mr. Godshall wrote to Mr. George indicating that he had ordered a certified copy of the policy and would provide a copy of the policy to Mr. George. (Exh. I). He also indicated that he believed that the applicable policy language did not require arbitration. (Id.; Def.'s Statement of Facts at 64; Pl.'s Resp. to Def.'s Statement of Facts at 64).

On February 6, 2006, Mr. George faxed a Motion to Compel Arbitration and Appoint Arbitrator and Notice of Presentation to Mr. Godshall. (Pl.'s Statement of Facts at 13; Def.'s Resp. to Pl.'s Statement of Facts at 13). Said Motion was filed in the Court of Common Pleas of Erie County and heard by Honorable John Bozza. Id. Judge Bozza granted Ms. Wisinski's Motion to Compel Arbitration . Id.

On February 9, 2006 ACIC filed a Motion to Reconsider Judge Bozza's Order compelling arbitration. (Pl.'s Statement of Facts at 14; Def.'s Resp. to Pl.'s Statement of Facts at 14). The parties filed written submissions and argument was held before Judge Bozza on ACIC's Motion to Reconsider. Id. On March 1, 2006, Judge Bozza denied ACIC's Motion to Reconsider. Id. On March 15, 2006, Mr. Godshall wrote to Ms. Hericks regarding the arbitration issue, stating as follows:

> We have taken a look at the procedural issues, which have been placed in front of us by Judge Bozza's decision to let this go to arbitration. Unfortunately, his ruling is not appealable at this time. We will have to go through the arbitration and then petition the Court to vacate the arbitration award based upon our policy. Given the Court's ruling against us, it is highly unlikely that he would so rule.
> We would then have an appeal. ... Unfortunately lawyers tend to give more money than juries. I will be constantly reminding opposing counsel that I have an appeal in my back pocket should the award be too high.

(Ex. L).

On February 8, 2006, Mr. Godshall sent a certified copy of Ms. Wisinski's policy to Mr. George. (Def.'s Statement of Facts at 70; Pl.'s Resp. to Def.'s Statement of Facts at 70). In a March 2, 2006 letter to Mr. Godshall, Mr. George indicated that, after reviewing the certified copy of the policy, he believed the policy limits for Ms. Wisinski's uninsured motorist claim to be $100,000, not $50,000, because of stacking. (Exh. M; Pl.'s Statement of Facts at 16; Def.'s Resp. to Pl.'s Statement of Facts at 16).

In a May 4, 2006 letter to Ms. Hericks, Mr. Godshall noted:

> Plaintiff's counsel asked whether or not we considered his view
> that the coverage should be "stacked". Unfortunately, our research
> indicates that they can, given the Claimant['s] $100,000 of
> uninsured motorist benefits.

(Exh. N). By letter dated June 26, 2006, Mr. Godshall advised Mr. George that he agreed that

stacking was available. (Def.'s Statement of Facts at 72; Pl.'s Resp. to Def.'s Statement of Facts

at 75).

On April 19, 2006, ACIC took a statement of Ms. Wisinski under oath. (Pl.'s Statement

of Facts at 18; Def.'s Resp. to Pl.'s Statement of Facts at 18). On May 10, 2006, an independent

medical examination of Ms. Wisinski was performed by Dr. William Abraham on behalf of

ACIC. Id. Dr. Abraham concluded that any injuries sustained by Ms. Wisinski as a result of the

December 20, 2001 accident did not substantially alter or accelerate the degenerative process in

Ms. Wisinski's knees. (Def.'s Statement of Facts at 76; Pl.'s Resp. to Def.'s Statement of Facts at

76). Ms. Wisinski disputes Dr. Abraham's conclusion noting that his report did not adequately

state Ms. Wisinski's medical conditions and was inconsistent with Dr. Steele's report and Ms.

Wisinski's deposition testimony. Dr. Steele's deposition testimony indicated that Ms. Wisinski

"did have preexisting arthritis in her knees and that the injury aggravated the condition and

caused an acceleration in her knee - - in her need for a new knee joint in both knees." (Pl.'s

Resp. To Def.'s Statement of Facts; Pl.'s Exhibit EE at 12196.)

Mr. Godshall took Dr. Steele's deposition testimony, which was documented in the claim

file log on July 18, 2006. (Def.'s Statement of Facts at 77; Pl.'s Resp. to Def.'s Statement of Facts

77). Ms. Herrick's log notes dated June 22, 2006 indicated that Dr. Steele acknowledged that

Ms. Wisinski had bone degeneration of the right knee prior to the December 20, 2001 accident.

(Def.'s Statement of Facts at 78; Pl.'s Resp. to Def.'s Statement of Facts at 78). Moreover, the log

notes indicate that Dr. Steele testified that he did not know that Ms. Wisinski was receiving Social Security Disability Benefits at the time of the accident and Mr. Godshall opined that Dr. Steele's deposition testimony was favorable to ACIC. Id. According to Ms. Wisinski, Dr. Steele clearly related Ms. Wisinski's knee surgeries to the motor vehicle accident. Id. Dr. Steele testified that trauma can accelerate the degenerative process in an individual who already had arthritic changes in the knee. (Pl.'s Exhibit EE at 12196).

> [Y]ou can damage tissue with an injury on a microscopic level, and there's studies in the literature which show that even normal joints where X rays are perfectly normal, MRIs are perfectly normal, a patient sustains an injury such as this, a jamming contact type of injury, where you can kill cells in the joint and you can't see that on an X ray or an MRI, and - - but because of the damage to the cells, the tissue doesn't get adequate nutrition or proper nutrition, and the tissue will deteriorate.

(Pl.'s Resp. to Def.'s Statement of Facts at 77; Pl.'s Exhibit EE at 12197.)

The log notes indicate that Ms. Hericks completed an Injury Evaluation and Claim File Analysis. (Def.'s Statement of Facts at 81; Pl.'s Resp. to Def.'s Statement of Facts at 81). She noted a settlement range between $7,208.78 to $149,306.00 based on soft tissue injuries and the possibility of arbitration. Id. Her log notes also indicate that ACIC would need to increase the next offer to at least $20,000. Id. She also noted that ACIC's counsel will "take the position that Arbitration will not necessary resolve (will appeal) & they will also eliminate a lot of time/expense if we resolve now." (Pl.'s Resp. to Def.'s Statement of Facts at 81.)

On July 28, 2006, a claims examiner for ACIC, Steve Shiner, increased the reserve to $100,000. (Def.'s Statement of Facts at 83; Pl.'s Resp. to Def.'s Statement of Facts at 83). Specifically, Shiner stated:

> I will extend settlement authorization to the $100,000 [policy limits]. That said, we should continue negotiating this case as if we have every intention of taking it to arbitration (with plans of appealing an adverse decision) and, if necessary,

proceed with the next scheduled deposition to demonstrate our commitment to that plan to PC [plaintiff's counsel].

(Pl.'s Statement of Facts at 83). Mr. Shiner also noted that stacking had been "overlooked" and

that defense counsel believed the arbitration panel would likely accept Ms. Wisinski's arguments.

(Def.'s Statement of Facts at 84; Pl.'s Resp. to Def.'s Statement of Facts at 84).

In a letter to Mr. George dated July 28, 2006, Mr. Godshall states:

I would like the opportunity to explore settlement. I am firmly of the opinion that this matter should not be arbitrated .... . [I]n an attempt to compromise this matter, I would offer you and your client the sum of $20,000 to see if we can resolve this matter.

(Exh. P).

Ms. Herick's log indicates that Mr. George sent correspondence to Ms. Hericks on

August 22, 2006, in which he indicated that ACIC had twenty-one days to pay the policy limits

or the demand would be withdrawn and a bad faith action would be initiated. (Def.'s Statement

of Facts at 89; Pl.'s Resp. to Def.'s Statement of Facts at 89). Ms. Hericks' log also indicates that

Mr. Godshall reviewed Mr. George's letter and recommended to ACIC that it extend the

settlement offer to the policy limits of $100,000. Id. Ms. Hericks' note indicates a desire to

further negotiate, but gave Mr. Godshall authority to settle up to the policy limit. (Def.'s

Statement of Facts at 90; Pl.'s Resp. to Def.'s Statement of Facts at 90).

The parties agreed to settle for $100,000. (Def.'s Statement of Facts at 90; Pl.'s Resp. to

Def.'s Statement of Facts at 90). ACIC directed that Medicare must be the payee on the

settlement check as a result of the lien asserted by Medicare on Ms. Wisinski's settlement

proceeds. (Pl.'s Statement of Facts at 21; Def.'s Resp. to Pl.'s Statement of Facts at 21).

However, even Mr. Godshall advised ACIC, by way of a letter dated November 7, 2006, that it

would be very rare for Medicare to be placed on a check and that other carriers typically will

accept personal indemnities from counsel as an alternative. Id.

During the process of settling the claim, Ms. Wisinski filed for Bankruptcy and as a result, this settlement required the approval of the United States Bankruptcy Court for the Western District of Pennsylvania ("Bankruptcy Court."). (Def.'s Statement of Facts at 92; Pl.'s Resp. to Def.'s Statement of Facts at 92, Exhibit 51). On December 29, 2006, Mr. George obtained Court approval from the Bankruptcy Court for fee agreement and settlement. Id. The Bankruptcy Court Order addressed the Medicare lien. Id.

On January 18, 2007, Mr. Godshall offered a Release of All Claims to Mr. George, which included language waiving Ms. Wisinski's income loss claim and potential bad faith claims. (Pl.'s Statement of Facts at 22; Def.'s Resp. to Pl.'s Statement of Facts at 22). Ms. Wisinski's counsel objected to said terms in the release and multiple versions were exchanged until an acceptable release was executed on February 9, 2007. (Def.'s Statement of Facts at 93; PL.'s Resp. to Def.'s Statement of Facts at 93).

## II. Standard of Review

Summary judgment under Federal Rule of Civil Procedure 56(c) is appropriate "if the pleadings, the discovery and disclosure of material on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In deciding a summary judgment motion, the court must 'view the evidence ... through the prism of the substantive evidentiary burden" to determine "whether a jury could reasonably find either that the plaintiff proved [her] case by the quality and quantity of evidence required by the governing law or that [she] did not. " Anderson v. Consolidated Rail Corp., 297 F.3d 242, 247 (3d Cir. 2002) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986)).

When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing' ... that there is an absence of evidence to support the non-moving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the moving party has carried this burden, then the burden shifts to the non-moving party who cannot rest on the allegations of the pleadings and must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986); Petruzzi's IGA Supermarkets, Inc. v. Darling Delaware Co., 998 F.3d 1224, 1230 (3d Cir. 1993). Thus, the non-moving party cannot rest on the pleadings, but instead must go beyond the pleadings and present "specific facts showing that there is a genuine issue of fact for trial." Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.2d 639, 643 n. 3 (3d Cir. 1998) (quoting Fuentes v. Perskie, 32 F.3d 759, 762 n. 1 (3d Cir. 1994)).

Moreover, in considering a motion for summary judgment, a district court may not "make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in [their] favor.'" Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255)); see also Doe v. County of Centre, Pa., 242 F.3d 437, 446 (3d Cir. 2001) (holding that "a court must take the facts in the light most favorable to the nonmoving party, the [plaintiff], and draw all reasonable inferences in their favor") (citation omitted).

## III.    Discussion

In her Partial Motion for Summary Judgment, Ms. Wisinski seeks judgment as a matter of law on her bad faith and breach of contract claims. ACIC seeks summary judgment on all of Ms. Wisinski's claims. In regard to Ms. Wisinski's bad faith claims, ACIC argues that she has failed to establish by clear and convincing evidence that it engaged in bad faith under 42 Pa.

C.S.A. §8371. Specifically, ACIC argues that it acted reasonably in its handling of both Ms.

Wisinski's first party income loss claim and her uninsured motorist claim. ACIC also argues

that Ms. Wisinski's breach of contract claim is merely a reiteration of her bad faith claim and

thus, as she has failed to establish bad faith, she has failed to establish breach of contract.

Finally, ACIC argues that Ms. Wisinski's unfair trade practices claims must fail.

## A. Bad Faith Claims

Ms. Wisinski alleges that ACIC acted in bad faith in its handling of her income loss claim

and

ACIC also acted in bad faith with regard to her uninsured motorist claim.

The Pennsylvania Bad Faith Law, 42 Pa.C.S.A. §8371 provides as follows:

> In an action arising under an insurance policy, if the court finds that the
> insurer has acted in bad faith toward the insured, the court may take all of
> the following actions:
>> (1) Award interest on the amount of the claim from the date the
>> claim was made by the insured in an amount equal to the prime
>> rate of interest plus 3%.
>> (2) Award punitive damages against the insurer.
>> (3) Assess court costs and attorney fees against the insurer.

42 Pa.C.S.A. §8371. Although the statute does not define "bad faith," The Pennsylvania

Superior court has characterized it as follows:

> Any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary
> that such refusal be fraudulent. For purposes of an action against an insurer for
> failure to pay a claim, such conduct imports a dishonest purpose and means a
> breach of a known duty (for example, good faith and fair dealing), through some
> motive of self-interest or ill will; mere negligence or bad judgment is not bad
> faith.

Terletsky v. Prudential Prop. and Cas. Ins. Co., 649 A.2d 680, 688 (Pa. Super. 1994), appeal

denied, 659 A.2d 560 (Pa. 1995). In order to prevail on a claim for bad faith, the insured is

required to establish by clear and convincing evidence that the insurer has acted unreasonably

and intentionally (or recklessly) in the handling of the insured's claim. Employers Mut. Cas. Co. v. Loos, 476 F.Supp. 2d 478, 489-90 (W.D. Pa. 2007) (citing Terletsky, 649 A.2d at 688). "To support a finding of bad faith, the insurer's conduct must be such as to 'import [] a dishonest purpose.'" Id. (quoting Adamski, 738 F.2d at 1036). "In other words, the [insured] must show that the insurer breached its duty of good faith through some motive of self-interest or ill will." Id. The insured's burden in opposing summary judgment "is commensurately high because the court must view the evidence presented in light of the substantive evidentiary burden at trial." Kosierowski v. Allstate Ins. Co., 51 F.Supp. 2d 583, 588 (E.D. Pa. 1999).

## 1. First Party Income Loss Claim

ACIC argues that Ms. Wisinski has failed to establish that it acted in bad faith with respect to her first party income loss claim. Specifically, ACIC argues that there were legitimate questions as to whether Ms. Wisinski was entitled to income loss benefits, and that she also failed to timely provide necessary documentation needed to support her claim. As a result, ACIC argues, it had reasonable and legitimate reasons for non-payment of first party income loss benefits.

In response, Ms. Wisinski argues that ACIC had all of the documentation it needed to properly evaluate the claim, or that ACIC had been given, at minimum, the necessary authorization to obtain all relevant records. Ms. Wisinski further argues that ACIC has unreasonably refused to either challenge Ms. Wisinski's income loss claim or to pay benefits, thereby establishing that ACIC acted in bad faith. We disagree.

The Pennsylvania Bad Faith Law governs claims of bad faith conduct in the handling of an insured's first party income loss claim. See e.g. Ingraham v. Liberty Mut. Ins. Co., Civil Action No. 06-1419, 2009 WL 54262 at *3 (W.D. Pa. Jan. 7, 2009). "[I]n many instances, bad

faith allegations arise out of insurance claims having incomplete or unclear facts, and these cases have frequently been resolved in favor of the insurers at summary judgment stage." Anderson v. Nationwide Ins. Ent., 187 F.Supp. 2d 447, 458 (W.D. Pa. 2002) (citing Quaciari v. Allstate Ins. Co., 998 F.Supp. 578, 581 n. 3 (E.D. Pa. 1998), affirmed, 172 F.3d 860 (3d Cir. 1998). "Insurers have prevailed, for example, when the factual circumstances of a claim for benefits made a dispute regarding its merits reasonable." Id. (citing *e.g.* Kosierowski v. Allstate Ins. Co., 51 F.Supp. 2d 583, 590-92 (E.D. Pa. 1999) affirmed, 234 F.3d 1265 (3d Cir. 2000) (reasonable for insurer to delay evaluating a case when value of injury was unclear due to poor documentation)).

Here, ACIC had a continuing question as to whether Ms. Wisinski actually had a legitimate wage loss claim in relation to the accident. On her initial application Ms. Wisinski indicated that she did have lost wages, but she had crossed out her responses, including the identity of her employer and checked a box indicating that she did not have lost wages. It was not until August 30, 2002, approximately nine months after the accident, that Ms. Wisinski alerted ACIC that she was asserting a wage loss claim.

Once ACIC received Ms. Wisinski's application for wage loss claim, it proceeded to follow through by providing Ms. Wisinski with the necessary forms including a wage loss verification form. On September 20, 2002, Ms. Wisinski filed a second Application for Benefits in which she indicated that she was employed at the time of the accident with the U.S. Postal Service. On November 7, 2002, ACIC sent Ms. Wisinski's doctor a request for verification of Ms. Wisinski's disability as a result of the accident. However, Ms. Wisinski's doctor never responded.

On May 15, 2003, an ACIC claim's specialist informed Ms. Wisinski's attorney that ACIC still needed wage loss information from Ms. Wisinski's employer as well as information

from her doctor. Ms. Wisinski's attorney agreed to provide the documentation as soon as possible. On June 5, 2003, he submitted a Wage and Salary Verification form from the United States Post office indicating that Ms. Wisinski had been granted Social Security Disability Benefits. In a May 19, 2003 letter, from the U.S. Postal Service, ACIC was informed that Ms. Wisinski had not worked for the Postal Service since January 3, 2001, nearly a year prior to this accident. Ms. Wisinski's attorney also provided notes from her doctor indicating that she is not able to return to work during her treatment. However, ACIC points out that the doctor's information says nothing about whether the wage loss claim was related to the accident.

We find that it was reasonable that ACIC continued to request further documentation to verify Ms. Wisinski's claimed loss. ACIC had incomplete and unclear facts on which to base a determination on Ms. Wisinski's income loss claim. ACIC did know that Ms. Wisinski was on Social Security Disability Income and that she had not worked for the U.S. Postal Service since a year prior to the accident. Based on this information, it appears that ACIC could have reasonably denied the wage loss claim. We can discern no ill will on the part of ACIC and find that ACIC did not act in bad faith with regard to this claim. Ms. Wisinski has failed to present clear and convincing evidence that ACIC did not have a reasonable basis for denying benefits under the policy or that the insurer acted with reckless disregard in denying the claim. See Terletsky, 649 A.2d at 688.

For the same reasons we will grant ACIC's Motion for Summary Judgment on first party income loss to the extent it is asserted as a breach of contract.

### 2. Uninsured Motorist Claim

Both ACIC and Ms. Wisinski seek summary judgment on Ms. Wisinski's bad faith claim regarding her uninsured motorist claim. ACIC argues that Ms. Wisinski has failed to establish

that any of the alleged bad faith conduct cited in her Complaint was unreasonable. Ms. Wisinski argues that the evidence shows that ACIC acted in bad faith by misrepresenting the uninsured motorists policy coverage limits; refusing to arbitrate Ms. Wisinski's uninsured motorist claim; and in ACIC's overall handling of the settlement process.

Since the statutory bad faith claim asserted by Ms. Wisinski is based on an entire course of alleged dilatory conduct rather than on a particular incident or denial of a claim, this Court must consider the entire course of conduct in order to determine whether ACIC's handling of Ms. Wisinski's uninsured motorist claim was conducted in bad faith. See Barry v. Ohio Casualty Group, 2007 WL 128878, (W.D. Pa.).

### a.   ACIC's Conduct in Regard to its Representation of the Policy Limits

The ACIC Claims Manual indicates:

> Upon loss notification, the file handler will verify coverage and check prior losses and document his/her findings in note. This should be accomplished within 24 hours of loss notification. If coverage cannot be confirmed, an action plan should be identified to resolve all coverage issues.
> For all liability and un/underinsured motorist claims, a written analysis on coverage will be completed in the file notes or if applicable, in the CFA under the coverage section. If a coverage issue on any policy is not resolved within thirty days of claim creation, the file should be referred to the supervisor for review.

(Pl.'s Exh. FF, pages 33383-84).

Here, several ACIC employees, including two supervisors and a claims examiner, had access to and reviewed Ms. Wisinski's file between December 22, 2001 and February, 2007. ACIC's log notes indicate that the first file handler, Terri West reviewed coverage on December 22, 2001, and incorrectly informed Ms. Wisinski that her coverage policy limit was $50,000. Additionally, ACIC's Claims Manual requires that a supervisor review the file and the policy

limit, however there is no indication in ACIC's records that a supervisor ever reviewed the file. In any event, Ms. West's error was not corrected by a supervisor.

The correct policy limit was not discovered until Ms. Wisinski's attorney reviewed the policy on March 2, 2006, over four years after the accident, and discovered that ACIC had under-reported the policy limit by $50,000. Ms. Wisinski had a $50,000 policy limit, but because her policy also included stacking benefits, her total policy limit was actually $100,000. Ms. Wisinski's stacking benefits appeared on the face of the Declarations page. Ms. Wisinski's counsel immediately informed ACIC of the stacking benefits and the resulting $100,000 policy limit. Two months later ACIC's outside counsel, Mr. Godshall, confirmed that the correct policy limit was $100,000, in an internal communication to ACIC on May 10, 2006, stating that "unfortunately" coverage could be stacked. In addition, ACIC independently confirmed that the correct policy limit was $100,000. However, ACIC did not relay this information to Ms. Wisinski's attorney, and thus did not correct its error, until June 26, 2006.

In support of its motion for summary judgment, Ms. Wisinski relies on Hollock v. Erie Insurance, 842 A. 2d 409 (Pa. Super 2004), where that Court found that Erie Insurance intentionally misled its insured for over a year regarding the coverage available. The insurance adjuster in Hollock knew the insured's correct policy limit, but never corrected the insured's misunderstanding of the limits. While not as egregious as the conduct in Hollock, ACIC's conduct in the instant case in representing the policy limit to Ms. Wisinski is unreasonable and reveals either intentional or reckless conduct on the part of ACIC.

Significantly, ACIC was in possession of the correct policy limit at all times as it appeared in its own policy. ACIC has a duty to correctly evaluate the policy limit and accurately report the information to its client. Here, at least six different ACIC employees worked on Ms.

Wisinski's claim, and none of them correctly identified the policy limit. While there is no direct evidence that ACIC intentionally did not inform Ms. Wisinski of the correct policy limit, an insurance company is in the best position to accurately determine the correct policy limit of its own policy. Thus an insurance company that possesses the information to allow them to accurately determine the policy limit but fails to inform the insured of the correct policy limit does so either intentionally or recklessly.

ACIC argues that it did not intentionally conceal the policy limit from Ms. Wisinski because she was provided with the Declarations page of her policy on February 7, 2002. (Defendant's Brief in Support of Motion for Summary Judgment at 9). ACIC explains that the Declarations page of the policy "clearly shows that the Endorsement carries a stacked benefit and that no request was made for election forms [which would indicate a waiver of the stacking benefit]." Id. We fail to see how this is significantly different from the insurance adjuster in Hollock who also knew that the insured possessed the policy and presumably the insured could have discovered the correct policy limit from that document. An insurance company's duty does not end by merely providing a complete policy to an insured. In Hollock the insurance adjuster always knew the correct policy limit, and failed to correct the insured's misunderstanding of the correct limit. Here, ACIC either knew or should have known the correct policy limit, failed to accurately report it to the insured, and when confronted with the insured's understanding that ACIC had quoted the wrong policy limit, ACIC held off confirming the correct policy limit for nearly four months.

As noted, ACIC's internal procedures require that an adjuster initially determines the policy limit and that a supervisor confirms the limit. As part of this evaluation, an adjuster would necessarily review the Declarations page and presumably note if it "clearly" indicated a

.

23

stacked benefit. Similarly, an adjuster would also examine the insured's policy to see if the insured completed a form indicating if the insured rejected stacking benefits. If there was no rejection of the stacked benefits, then the insurance adjuster would know that stacking applied. The initial ACIC adjuster here unreasonably and recklessly failed to perform these essential components of properly evaluating a policy and thus reported an incorrect policy limit to Ms. Wisinski. Despite a policy requiring a supervisor to review the initial evaluation and several other ACIC employees also handling the claim, the correct policy limit was never discovered internally by ACIC. Finally, even when ACIC was notified by Ms. Wisinski's attorney that ACIC may have incorrectly identified the policy limit, it took ACIC nearly four more months before it would confirm the correct amount. Under these circumstances we are compelled to conclude that ACIC's conduct was unreasonable and done either intentionally or recklessly.

### b. ACIC's Conduct in Regard to the Arbitration of Ms. Wisinski's Claims

Ms. Wisinski also alleges that ACIC acted in bad faith when it refused to arbitrate her claim in accordance with her policy. Ms. Wisinski's attorney, Timothy George, requested arbitration of the uninsured motorist claim on December 9, 2005. ACIC, however, was opposed to arbitration. On December 28, 2005, ACIC's sought outside counsel's advice as to whether ACIC could rightfully object to the request for arbitration. After reviewing the policy provided by ACIC, outside counsel informed ACIC that, in his opinion, ACIC was not required to arbitrate the claim. However, ACIC had provided an outdated policy to its outside counsel that did not include Ms. Wisinski's new Pennsylvania Uninsured Motorists Endorsement that allowed arbitration upon the request of either party. Thus, outside counsel's opinion was based on incorrect and outdated information provided by ACIC.

The original relevant arbitration language provided that "[b]oth parties must agree to arbitration." (Pl.'s Exh. H at 0131.) However, a Pennsylvania Uninsured Motorist Endorsement to the policy changed the applicable relevant arbitration language to provide that "[e]ither party may make a written demand for arbitration." (Pl.'s Exh. A, Bates No. 45.) Ms. Wisinski properly demanded arbitration without seeking the consent of ACIC pursuant to the clear language of the revised policy. In <u>Anderson</u>, the Court found that Nationwide's persistent refusal to arbitrate its dispute with the insured, notwithstanding an unambiguous arbitration clause in its policy, was bad faith. 187 F.Supp.2d at 459-460. The <u>Anderson</u> court explained that the conduct at issue is not the insurer's position on the merits of the claim; but rather the insurer's refusal to arbitrate in contradiction to the clause in its policy. <u>Id.</u> At 459. Like in <u>Anderson</u>, it was clear and unambiguous on the face of ACIC's policy that either party could request arbitration. By refusing to arbitrate upon Ms. Wisinski's request, ACIC acted in bad faith.

Notwithstanding the clear policy language ACIC argues that it was not required to arbitrate because the Pennsylvania Supreme Court has ruled that the Pennsylvania Insurance Commissioner does not have the authority to mandate that all uninsured motorist policies contain mandatory arbitration provisions. <u>IFP v. Koken</u>, 889 A.2d 550 (Pa. 2005). The <u>Koken</u> decision is irrelevant to the instant case because ACIC's arbitration obligation was not simply mandated by the Pennsylvania Insurance Commissioner but instead was actually a part of ACIC's policy itself. ACIC improperly and unreasonably relied on the <u>Koken</u> decision as support for its position that it was not required to arbitrate despite its policy terms.

Finally, ACIC argues that its decision to challenge the requirement of arbitration was not done in bad faith because ACIC sought advice from outside counsel regarding its obligations.

Again we fail to see how ACIC's conduct in this regard helps its case. First and foremost it was ACIC which failed to provide outside counsel with a current and complete policy on which to base his opinion. Second, it is undisputed that ACIC informed outside counsel when requesting his opinion regarding arbitration that ACIC did not want to arbitrate the claim. Moreover, Ms. Hericks specifically directed outside counsel to the outdated policy when she told him that "it appears according to our policy wording that we have the option as to whether ACIC has to proceed to arbitration." Finally, ACIC relied on out-of-state counsel who had minimal experience handling Pennsylvania Uninsured Motorist claims. His practice is located in Canton, Ohio and he testified that less than 5% of his practice dealt with Pennsylvania auto insurance claims. Given that ACIC told outside counsel, who had minimal experience with Pennsylvania auto insurance claims, that it did not want to arbitrate Ms. Wisinski's claim and then failed to provide him with accurate policy information, it is no surprise that outside counsel told ACIC what it wanted to hear. We find, that under these circumstances, it was unreasonable for ACIC to rely on the advice of counsel when it did not provide him with the correct policy.

### c. ACIC's Conduct in the Settlement of Ms. Wisinski's Uninsured Motorist Claim

Ms. Wisinski also alleges that ACIC's overall course of conduct in the settlement of her claim was done in bad faith. More specifically, Ms. Wisinski points to ACIC's unreasonably low settlement offers, its false threat to appeal an arbitration award, and its unreasonable post-settlement demands resulting in delaying the settlement funds.

Ms. Wisinski initially made a settlement demand on September 23, 2003. (Plaintiff's Exhibit Y). Four months later, on January 30, 2004, ACIC made its first settlement offer of $7,798. Apparently, no further settlement discussions were held until August 2005, when ACIC

was informed that Ms. Wisinski was no longer represented by an attorney. ACIC's response was to ask the now unrepresented Ms. Wisinski if she still wished to pursue her claim. Ms. Wisinski stated that she did wish to pursue the claim and demanded what she believed her policy limit was -- $50,000, to settle the claim. Three months later, on December 9, 2005, after having received a report from Ms. Wisinski's orthopedic surgeon documenting the relationship between the accident and Ms. Wisinski's need for bilateral total knee replacements and learning that Ms. Wisinski's medical bills were already in excess of $50,000, ACIC raised its initial offer by $1,202, to $9,000. At that point, Ms. Wisinski's new attorney sought arbitration in accord with the policy language.

After Judge Bozza granted Ms. Wisinski's motion to compel arbitration on February 8, 2006, ACIC was aware that its own policy required that it arbitrate the claim upon Ms. Wisinski's request, that the actual policy limit was $100,000, that it would inevitably lose arbitration and the award would be at or greater than the policy limit. Despite this knowledge ACIC unreasonably and falsely threatened that it would appeal an arbitration award in order to induce Ms. Wisinski to accept a lower settlement offer.

The Pennsylvania Unfair Practices Act, Section (a)(10)(xi) states that it prohibits an insurer from " making known to insureds or claimants a policy of appealing from arbitration awards in favor of insured or claimants to induce or compel them to accept settlements or compromises less than the amount awarded in arbitration." 40 Pa. C.S.A. §1171.5 (a)(10)(xi). This is exactly what ACIC did in this case. In ACIC's log notes Home Office Examiner, Steve Shiner wrote:

> Diane [Hericks] has authorized [outside defense counsel] to make
> a counteroffer of 20k which would be accompanied by our very
> persuasive causation arguments, as well as the plan to appeal an
> adverse arbitrator's award to a jury trial. However, we do not

expect [Plaintiff's counsel] to be willing to come off the [policy limit] significantly, if at all, with over 60 k in medical expenses . . . especially with the favorable arb panel they have drawn. If we were to go forward with the arbitration, we will have to undertake two additional expert depositions . . . and an expensive appeal process as the lower court judge is not likely to grant our appeal so we would have to take it to a higher court. In addition, this case is going to boil down to competing experts, and there is no guarantee a jury would accept the aggravation/acceleration argument. Accordingly, I will extend settlement authorization to the $100,000 [policy limit]. That said, we should continue negotiating the case as if we have every intention to taking it to arbitration (with plans of appealing an adverse decision) and if necessary, proceed to the next scheduled deposition to demonstrate our commitment to that plan to [Plaintiff's counsel].

(Defendant's Exhibit 6, at 1677.) See also Plaintiff's Ex. L, at 1050 ("I will constantly remind opposing counsel that I have an appeal in my back pocket should the award be too high"); and Defendant's Ex. 6, at 1676 ("take the position that arbitration will not necessary resolve (will appeal) & they will also eliminate a lot of time/expense if we resolve now").

As arbitration loomed, on August 30, 2006, without any additional medical information, ACIC unilaterally raised its settlement offer to $20,000. ACIC's new offer was still less than half of the total amount of medical expenses incurred by Ms. Wisinski, and only one fifth of the policy limit of $100,000. Even ACIC's home office examiner, Mr. Shiner, acknowledged that $20,000 was unreasonable when he noted: "we do not expect [Plaintiff's Counsel] to be willing to come off [of] the [policy limit] significantly, if at all, with over $60K in medical expenses and an alleged permanent disability from her prior employment; especially with the favorable [arbitration] panel they have drawn." (Def.'s Exhibit 6, Bates No. 1677).

When Ms. Wisinski did not accept the low ball offer, a month later on September 27, 2006, again without any new information, ACIC increased its offer to the policy limit $100,000. Mr. Shiner explained that the reason ACIC unilaterally increased its settlement offer 400% was

the fact that it became clear that Ms. Wisinski's claim would be resolved in her favor at arbitration. (Plaintiff's Exhibit U, at 55)

ACIC asserts that its evaluation of Ms. Wisinski's claim was not unreasonable because it was based, in part, on ACIC's uncertainty as to whether Ms. Wisinski's injuries were caused by the December 20, 2001 accident or were pre-existing. However, the only actual medical documentation that ACIC possessed when they made the first two extremely low settlement offers indicated that Ms. Wisinski's injuries were caused and accelerated by the accident.

ACIC's conduct is similar to the insurer's conduct in <u>Bonenberger v. Nationwide Mutual Insurance</u>, 791 A.2d 378 (Pa. Super. 2002). In <u>Bonenberger</u>, Nationwide's initial settlement offer was approximately 9% of the actual value of the insured's claim. The Pennsylvania Superior Court found that Nationwide disregarded the plaintiff's medical records and did not perform a reasonable evaluation based upon the facts. Similarly, here, ACIC offered an initial offer that was approximately 7% of the total value of the claim, but ultimately relented and offered the policy limits when arbitration was about to commence.

Once the offer was accepted, ACIC delayed paying the settlement funds until January 18, 2007, because ACIC wanted Ms. Wisinski and her attorney to agree that Medicare would be included as a payee on the settlement check, and ACIC wanted Ms. Wisinski to release any other claims she had against ACIC, specifically her bad faith and wage loss claims she asserts in this lawsuit.

Ms. Wisinski's had exhausted her first party benefits in June 2003. Thereafter, her ongoing treatment was paid for by Medicare, and thus ACIC argued that Medicare must be included as a payee on the settlement check in order to protect ACIC from being liable for future payments to Medicare. However, both Ms. Wisinski and her attorney agreed to personally

indemnify ACIC for the Medicare charges. ACIC's counsel agreed with Ms. Wisinski's counsel that indemnification by the insured and her attorney was an accepted industry practice and advised ACIC that Medicare did not need to be included on the check. Nonetheless, ACIC persisted in its demand causing months of delay in paying the settlement funds to Ms. Wisinski.

Finally, ACIC also delayed final resolution of the agreed-upon settlement by insisting that Ms. Wisinski agree to release her wage loss and bad faith claims before distributing the settlement funds. An insurance carrier that attempts to coerce an insurer to release her bad faith claim when the policy limit was offered as settlement constitutes bad faith. Hayes v. Harleysville, 841A.2d 121 (Pa. Super. 2003) Alloc. Denied 870 A.2d 322 (Pa. 2005). This is the exact conduct that ACIC engaged in, and it clearly indicates ill will towards Ms. Wisinski.

Taken together ACIC's conduct in proposing unreasonably low settlement offers, in falsely threatening to appeal an arbitration award, and its unreasonable post-settlement demands supports a finding of bad faith on the part of ACIC.

### d.    Conclusion

Considering ACIC's entire course of conduct in the settlement of Ms. Wisinski's Uninsured Motorist Claim, we find that ACIC's conduct was intentional and unreasonable and that Ms. Wisinski has shown by clear and convincing evidence that ACIC did act in bad faith in regard to the handling and settlement of her claim. We find that ACIC acted in bad faith by misrepresenting the uninsured motorists policy coverage limits; by refusing to arbitrate Ms. Wisinski's uninsured motorist claim in direct conflict with its own policy language; by misleading Ms. Wisinski regarding their intentions to appeal an arbitration award; by proffering unreasonably low settlement offers; and in unreasonably delaying payment of the settlement funds and attempting to have Ms. Wisinski waive future claims against them for bad faith. In

light of ACIC's entire course of conduct we find that ACIC acted in bad faith with regard to Ms. Wisinski's uninsured motorist claim. Accordingly, we will grant summary judgment in favor of Ms. Wisinski on her bad faith claim regarding her uninsured motorist claim.

### B.    Ms. Wisinski's Breach of Contract Claim

Ms. Wisinski asserts breach of contract claims based on her facts underlying her bad faith claims related to her uninsured motorist claim and her wage loss claim. As noted, because we determined that there was no bad faith in relation to Ms. Wisinski's wage loss claim, there is no breach with regard to this claim either. However, we do find a breach with regard to ACIC's refusal to arbitrate. In Anderson the court found that Nationwide's refusal to arbitrate a claim, in contravention of policy language giving the insured the right to arbitrate, was a material breach of the insurance contract. 187 F.Supp.2d at 457. Likewise, ACIC refused to arbitrate the dispute upon Ms. Wisinski's request in contravention of the unambiguous arbitration clause in the policy. We find ACIC's refusal to arbitrate to be a breach of the contract and we will grant summary judgment in favor of Ms. Wisinski.

### C.    Ms. Wisinski's Unfair Trade Practices Claims

We see no merit in Ms. Wisinski's claim under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-1 *et seq.* See Anderson, 187 F.Supp.2d at 461 (private cause of action limited to "unfair or deceptive methods, acts, or practices in the conduct of any 'trade or commerce,' § 201-3, defined as 'the advertising, offering for sale, sale or distribution of any services and any property'", quoting Katz v. Aetna Cas. & Sur. Co., 972 F.2d 53, 55 (3d Cir.1992).) The conduct Ms. Wisinski complains of "is not related to an unfair trade practice but rather concerns [ACIC's] refusal to perform its contractual obligations," and such "conduct is simply not the proper subject matter for a UTPCPL claim."

Anderson, 187 F.Supp.2d at 461. Accordingly, we will grant summary judgment in favor of ACIC as to this claim.

## IV. Conclusion

Our review of the record evidence indicates that there is no genuine issue of material fact as to whether ACIC acted in bad faith in regard to Ms. Wisinski's uninsured motorist claim. As discussed we based our conclusion on ACIC's entire course of conduct in handling the uninsured motorist claim. In addition, we will grant summary judgment in favor of Ms. Wisinski on her claim that ACIC breached the contract by refusing to arbitrate upon her request. We will grant summary judgment in favor of ACIC on the remainder of Ms. Wisinski's claims.

An appropriate Order follows.

January 4, 2010
Date

Maurice B. Cohill, Jr.
Maurice B. Cohill, Jr.,
Senior District Judge